# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CORD HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 4764 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| DETECTIVE RYAN RUTHENBERG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Cord Harris is a pre-trial detainee, charged with aggravated domestic battery, and is currently housed at Cook County Jail. He brought a lawsuit, *pro se*, charging various defendants with a violation of his due process rights and malicious prosecution. [Dkt. #1]. He claims that a security videotape from a convenience store that would have exonerated him in the attack on his wife, Toni Harris, was destroyed. Mr. Harris attributes the spoliation to Detective Ryan Ruthenberg of the Streamwood Police Department. Mr. Harris then filed an amended complaint and petition to proceed *in forma pauperis*. [Dkt. # 11].

Judge Coleman, to whom the case had been assigned prior to the parties having consented to jurisdiction here, 28 U.S.C. §636(c)(1), reviewed the amended complaint pursuant to 28 USC §1915A, and dismissed all defendants except for Det. Ruthenberg and all claims other than the charge that the detective's destruction of evidence violated Mr. Harris's due process rights. [Dkt. # 13, 14, at ¶16]. Det. Ruthenberg has filed a motion to dismiss. Judge Coleman recruited counsel for Mr. Harris, and he responded to the motion.

**I.**

To survive a motion to dismiss, a claim must be plausible rather than merely conceivable or speculative, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), meaning that a plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010). The proper question to ask remains, "could these things have happened, not did they happen." *Id.* And, it must be remembered that, even after *Twombly* and *Iqbal*, *pro se* complaints like Mr. Harris's are to be construed liberally. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).

In the context of a motion to dismiss, the well-plead allegations of a complaint must be taken as true and all reasonable inferences must be drawn in the plaintiff's favor. *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). And, so it is with Mr. Harris's allegations.

In addition, documents attached to a complaint and referred to in it, are considered as part of the pleadings. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Geinosky v. City of Chicago*, 675 F.3d 743, 745–46 n. 1 (7th Cir. 2012). In this instance, Mr. Harris has attached a "Narrative Supplement" from Dt. Ruthenberg's case report, and a transcript from a state court proceeding in which Mr. Harris's criminal defense counsel was afforded the opportunity to question Det. Ruthenberg about the videotape. [Dkt. # 14]. That does not necessarily mean that Mr. Harris is vouching for the veracity of Det. Ruthenberg's report or of his testimony, however. *Anderson v. Randle*, 451 Fed.Appx. 570, 571 (7th Cir. 2011); *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006); *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000).

**FACTUAL BACKGROUND**

On December 10, 2011, Mr. Harris's wife, Toni, called the Streamwood Police Department ("SPD") and reported a "physical altercation" had occurred between her and Mr. Harris in the parking lot of a 7-11 convenience store. [Dkt. #14, ¶ 7; Ex. B].[1] Det. Ruthenberg was assigned to the investigation, and he spoke to the manager of the 7-11 store and viewed the store's surveillance videotape from the time of the incident. [Dkt. #14, ¶ 8; Ex. B].

Mr. Harris alleges that the VHS tape "turned out to be exculpatory for the defense because it showed that all injuries that Toni Harris reported to Streamwood Police was[sic] caused by her own actions." [Dkt. #14, ¶ 9]. Mr. Harris goes on to claim that "Detective Ryan viewed this video and discovered that Mr. Harris Did [sic] not commit the crimes that he is being prosecuted for." [Dkt. #14, ¶ 9]. Then, according to Mr. Harris, the detective destroyed the tape. [Dkt. #14, ¶ 9].

If the tape had been presented to the grand jury, Mr. Harris contends it would have resulted in no indictment, as it proved beyond all doubt his innocence. Mr. Harris alleges that Det. Ruthenberg lied under oath in a February 27, 2013 evidentiary hearing – Mr. Harris attaches the transcript of that testimony. Det. Ruthenberg must have forgotten that he wrote a narrative of the videotape's content, says Mr. Harris, because his testimony is completely contradicted by it. [Dkt. #14, ¶¶ 10-11].

Here is how Det. Ruthenberg described the videotape in that narrative report:

The video was . . . of poor quality and the only camera angle that showed any of the parking lot was from a camera inside the store. Due to the reflection off of the glass and a rack being in the way, I was only able to see minimal activity outside the store and very little of the vehicle. At approx. 0135 hrs, a vehicle is seen pulling into the

---

[1] In his initial complaint, Mr. Harris explained that he accidentally hit his wife while driving her vehicle in the parking lot while she was attempting to enter through the rear door. [Dkt. # 1, at 3].

lot close to the gas pumps and parks parallel to the store with the front of the vehicle facing W/B. At approx. 0138 hrs, the brake lights on the vehicle flash several times and then a person is seen walking from the driver's side of the vehicle to the passenger's side and then back to the driver's side. The victim is seen also at this time opening the door to the store and presumably asking the clerk to call 911. The vehicle then drives off W/B through the lot.

[Dkt. #14, at 12]. At the hearing, Det. Ruthenberg, described the content of the tape this way:

> The camera -- the only camera that covers the parking lot is from inside the store, okay, facing out in the parking lot. So it being nighttime, the lights are on in the store, there was a glare from the glass, it's from inside the store looking out of the window. So there is a glare and there is like some sort of display rack that was in the way so it was a very obstructed view. You really could not make anything out.
> 
> \* \* \*
> 
> What I saw was some sort of vehicle at that time. I believe the time was about 1:35 in the morning. You could see some sort of vehicle pull up and stop near the pumps because the Seven/Eleven there's also a gas station there. And I could see brake lights and that was about it for the initial at 1:35. Three minutes later at 1:38, you could see a shape pass between the store and the tail lights.
> 
> \* \* \*
> 
> A shape. I assume it's a person. But you could just see basically something pass between the taillights and the store or in between the vehicle and the store and then we see the -- can tell that the vehicle drives away.
> 
> \* \* \*

[Dkt. #14, at 22-24]. Det. Ruthenberg went on to explain, when questioned by Mr. Harris's criminal defense attorney, that he did not secure the tape as evidence "[b]ecause it was of no evidential value." [Dkt. #14, at 26]. He speculated that it had since been taped over as the stores reuse them. [Dkt. # 14, at 28-29]. He allowed that the tape was clear enough to help him recognize the vehicle as a GMC Envoy – the kind Mrs. Harris drove. [Dkt. # 14, at 30-31].

## ANALYSIS

### A.

There are two ways to interpret Mr. Harris's due process claim. The first is that he is stating a *Brady* violation. *See Brady v. Maryland,* 373 U.S. 83 (1963). A due process violation in this

4

context occurs when the government fails to disclose evidence materially favorable to the accused. *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006); *Mosley v. City of Chicago*, 614 F.3d 391, 396-97 (7th Cir. 2010). A *Brady* violation is demonstrated by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *Mosley*, 614 F.3d at 396-97. The key word there being, "verdict." As the Supreme Court has said, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). No verdict – no trial – no violation.

A *Brady* violation can be broken down into three basic elements: (1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, the evidence was "material." *See Youngblood*, 547 U.S. at 869–70, *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008). Evidence is "material" "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 281 (1999); *Carvajal*, 542 F.3d at 566-67. Here, again, there has been no proceeding – no trial – and no result. There can be no *Brady* violation.

Mr. Harris does allege in his complaint – but does not argue in his response brief – that the grand jury would not have indicted him for aggravated domestic abuse if the 7-11 VHS tape had been presented. But the failure to present exculpatory evidence to the grand jury is not a due process violation because the grand jury is an accusatory, rather than an adjudicatory, body, and so the

5

disclosure of exculpatory evidence is not required. *United States v. Williams*, 504 U.S. 36, 51-54 (1992)("requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body. It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."); *United States v. Mahalick*, 498 F.3d 475, 480 (7th Cir. 2007); *United States v. Jarrett*, 447 F.3d 520, 529-30 (7th Cir. 2006); *United State v. Stout*, 965 F.2d 340, 343 (7th Cir. 1992).

**B.**

The other way to interpret Mr. Harris's claim is that he alleges the government violated due process by failing to preserve potentially exculpatory evidence is assessed a bit differently. This type of claim is not governed by *Brady*, but by the more rigorous standard established in *Arizona v. Youngblood*, 488 U.S. 51, 56–58 (1988). This requires Mr. Harris to demonstrate: "(1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before the evidence was destroyed; and (3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Stallworth*, 656 F.3d 721, 731 (7th Cir. 2011); *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004).

Defendant argues that Mr. Harris's complaint establishes that Det. Ruthenberg did not in bad faith destroy potentially exculpatory evidence thanks to the attached narrative report and the hearing transcript. Because Det. Ruthenberg stated, in his testimony and report, that he did not collect the tape because it had no evidentiary value, he contends the complaint must be dismissed. [Dkt. #29, at 7-8]. Mr. Harris argues that – as was pointed out earlier in this opinion – his attachment of the

report and transcript does not mean that he is accepting the truth of Det. Ruthenberg's assessment of the video, either of being of too poor quality to show anything or the reason why he didn't preserve it. Mr. Harris claims it would have shown he didn't do what he is charged with, and that Det. Ruthenberg lied about it. In other words, he alleges that Det. Ruthenberg destroyed potentially exculpatory evidence in bad faith. Contrary to the defendant's brief, Mr. Harris doesn't have to "show" that Det. Ruthenberg destroyed – or failed to preserve – evidence he knew was exculpatory. This is a motion to dismiss, he doesn't have to "show" anything. His allegations must be taken as true. On a motion for summary judgment – none of the cases defendant cites are 12(b)(6) cases – things might be quite different.

## C.

All this, however, leads to the real trouble with Mr. Harris's complaint. He is complaining about an ongoing, state-court, criminal proceeding, and, along with seeking monetary damages, he wants the federal court to enjoin that proceeding. This is a classic *Younger* abstention situation – a criminal defendant seeking a federal injunction to block his state court prosecution on federal constitutional grounds. *Younger v. Harris*, 401 U.S. 37, 53-54 (1971); *SKS & Associates, Inc. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010). *Younger* abstention is an exception to the general rule that federal courts must hear and decide cases within their jurisdiction. The doctrine reflects a concern that federal interference with certain types of important state proceedings is unwise and unnecessary in a system of dual sovereigns, *Younger*, 401 U.S. at 44, and it requires that federal courts dismiss such cases rather than intervene in state affairs. *SKS*, 619 F.3d at 678.

There are three exceptions to the rule requiring abstention: (1) the state proceeding is motivated by a desire to harass or is conducted in bad faith, (2) there is an extraordinarily pressing

7

need for immediate equitable relief, or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions. *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 664 (7th Cir. 2007).[2] While Mr. Harris alleges that Det. Ruthenberg acted in bad faith with regard to the videotape [Dkt. #14, ¶ 17], he does not allege that the proceedings are being conducted in bad faith. The charge of domestic battery came from Mr. Harris's wife. The hearing transcript Mr. Harris attaches to his complaint shows that the presiding judge is not denying Mr. Harris the opportunity to question and challenge Det. Ruthenberg regarding his failure to collect the tape. [Dkt.#14, at 8-20] Moreover, the judge was amenable to defense counsel's request to investigate the matter further and bring in the store manager to provide his take on what the videotape showed – indeed, the judge gave counsel all the time he needed. [Dkt. #14, at 20-21].

These, then, are not proceedings being conducted in bad faith as were those in *Mulholland v. Marion County Election Bd.*, 746 F.3d 811 (7th Cir. 2014). There, the county election board was set to invoke a law against a candidate, despite the fact that it had been ruled unconstitutional in another proceeding against the board itself. While the court found that the bad faith exception applied, the court indicated it was a close call, saying that the Board's action "shave[d] very close to harassment or bad faith prosecution." 746 F.3d at 818. The proceedings depicted in Mr. Harris's complaint do not even begin to approach what was going on in *Mulholland*.

Mr. Harris also alleges that he is being harassed because the state is continuing to prosecute his case and has requested him to plead guilty. The mere continuation of the case against Mr. Harris

---

[2] In his motion to dismiss, the defendant completely ignores Mr. Harris's allegations along these lines. [Dkt. #29, at 10-11]. But, we must complete our analysis because, in *Younger* abstention is applicable, a federal court "may need to . . . protect state sovereignty even if the litigants are sleepwalking." *Jaskolski v. Daniels*, 427 F.3d 456, 460 (7th Cir. 2005).

– and, as happens in the ordinary course of these things, the offer of plea arrangements – does not constitute harassment, let alone harassment for *Younger* purposes. If it did, the federal court would have to intervene in every ongoing criminal prosecution. The *Younger* doctrine would be gutted.

Finally, Mr. Harris claims he has no forum to address the due process violation regarding the videotape. [Dkt. #14, ¶ 16]. But, a constitutional issue like that may be litigated during the course of his criminal proceeding. *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013); *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007). "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)(when a constitutional challenge "relate[s] to pending state court proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand."). And, as already stated, the transcript Mr. Harris attached to his complaint demonstrates that he is being afforded an adequate forum to challenge Det. Ruthenberg's failure to collect and preserve the videotape.

Mr. Harris lodges just one argument against *Younger* abstention: Judge Coleman would have already dismissed his complaint following her §1915A review if *Younger* abstention were appropriate. That she did not precludes granting the defendant any further relief at this point. The argument rests on an overly expansive view of a court's screening function under §1915A, which provides in pertinent part:

> (a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

government entity.

(b) Grounds for Dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Review of a complaint under §1915A is done under the same standard applicable to a motion to dismiss under Fed.R.Civ.P. 12(b). *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). That is why Mr. Harris feels his complaint is immune from any further scrutiny.

Courts that have addressed the question of whether a complaint can be dismissed after it survives §1915A screening have, almost invariably, answered yes. *See, e.g., James v. Perez*, 2012 WL 5387676, 2 (E.D.Cal. 2012); *Courtney v. Murphy*, 2012 WL 5328719, 1 (E.D.Mich. 2012); *Muhammad v. Court of Comon Pleas of Allegheny County, Pa.*, 2011 WL 4368394, 3-4 (W.D.Pa. 2011); *Cusamano v. Sobek*, 604 F.Supp.2d 416, 435 n. 29 (N.D.N.Y.2009); *Morales v. County of Westchester*, 97–CV–0498, 1997 WL 32985, at *2 (S.D.N.Y. 1997). Notably, under 28 U.S.C. § 1915(e)(2), a court may dismiss a case "at any time" if it determines the complaint fails to state a claim. The statute then does not freeze in amber an initial screening determination; nor should it given the insular nature of that review, which is at odds with our adversarial system of justice.

Case after case has lauded the adversarial nature of our legal system and stressed partisan advocacy on both sides as the strength of our system. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993); *United States v. Cronic*, 466 U.S. 648, 655 (1984)("'Truth' is best discovered by powerful statements on both sides of the question.' "). *See also Alioto v. Town Of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011); *United States v. O'Neill,* 437 F.3d 654, 660 (7th Cir.2006).

*Accord Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613-614 (7th Cir.2006); *Albrechtsen v. Regents of University of Wisconsin System,* 309 F.3d 433, 436 (7th Cir.2002); *Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir.1992); Holmes, The Law, in Collected Speeches 16 (1931) ("Shall I ask what a court would be, unaided? The law is made by the Bar, even more than by the Bench.").

Indeed, Justice Brandeis thought a "judge rarely performs his functions adequately unless the case before him is adequately presented." *The Living Law,* 10 Ill.L.Rev. 461, 470 (1916). This is a basic proposition often expressed by the Seventh Circuit. *Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir.2008) (Easterbrook, C.J.).[3] And yet, the fact remains that a Section 1915A screening is performed without any adversarial development of the issues. Therefore, there is no persuasive reason why a §1915A screening should foreclose a post-screening dismissal of a complaint upon briefing by the parties represented by counsel. That the complaint may have survived an initial look by the judge, ought not be and is not dispositive.

The last little nuance is the fact that Mr. Harris seeks not only an injunction, but damages as well. Because monetary relief is not available to him in his defense of criminal charges, however, and because his claims may become time-barred by the time the state prosecution has concluded, his damage claims must be stayed rather than dismissed. *Gakuba*, 711 F.3d 751, 753; *FreeEats.com*, 502 F.3d at 600; *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998).

## CONCLUSION

---

[3] *See also Adamson v. California,* 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring)("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."); *United States v. Elliott*, 467 F.3d 688, 690 (7th Cir.2006) (Easterbrook, J.)("That judicial comments lacking the benefit of an adversarial presentation are more likely to be uninformed is a principal reason why dicta are not binding....").

The plaintiff's claim seeking to enjoin the state court criminal proceedings is dismissed, and his damage claims are stayed pending the outcome of those proceedings.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/5/14